## AARON FOSTER Jr. & wife *vs.* JOHN MANSFIELD.

If a grantor, at the time of his giving directions for the making of a deed, and after the deed is drawn and presented to him, directs and intends, that from and after its execution it shall be taken and retained by the scrivener until after the grantor's death, and then be delivered to the grantee — and he thereupon executes the deed, pursuant to such intent, and then, without changing his purpose, delivers it to the scrivener to be attested and acknowledged, and to be retained by him, without any further act of the grantor; and the deed is attested and acknowledged, and is retained by the scrivener until after the grantor's death, and is then delivered to the grantee — the estate vests in the grantee from the time of the execution of the deed.

THIS was a petition for partition, in which it was alleged that the petitioners were seized, in right of the wife, of several tracts of land therein described, as tenants in common with the respondent. The respondent pleaded that he was sole seized, and that the petitioners were not seized in manner and form as they had alleged. The trial was before the chief justice, who thus reported the case :

Both parties claimed under John Mansfield late of Danvers, deceased. Mary Foster, the female petitioner, and the respondent, were the only children and heirs of said John Mansfield. The petitioners contended that said John Mansfield senior died seized of the premises, intestate, and that they descended to his son and daughter in equal shares. The respondent contended that his father conveyed them to him, in his lifetime, by deed ; and he gave in evidence a deed from his father to himself, bearing date April 18th 1839, purporting, in considera tion of $1000 paid, and of love and affection, and other good considerations, to convey the premises to his son in fee, with covenants of seizin and warranty. This deed purported to be attested by Elbridge Gerry and Joseph Shed; to be acknowledged before said Joseph Shed, as justice of the peace ; and to be recorded in May 1839.

The only question, ultimately raised, was as to the delivery of the deed, and its legal effect. There was evidence tending to show that the intestate, a man about seventy years old, and infirm, during his last sickness, after it was intimated to him by some of his friends that he probably would not recover, sent

for Doctor Shed, a physician and magistrate, and requested him to write two deeds ; one to convey a certain part of his real estate, by him specially designated, to his daughter ; and the residue of his real estate to his son ; and that the deeds were prepared accordingly, as soon as they could be done :   That after the intestate had given his instructions for the deeds, and Dr. Shed had taken minutes for the purpose of preparing them, the intestate told Dr. Shed that he wished to have the deeds executed, and that he Dr. Shed should retain them and deliver them to the respective grantees, after his death :   That after the deeds were prepared, which was done immediately in the house, Dr. Shed went back with them to his bed-room, and he again said that he wanted to execute them, and when executed, he wanted Dr. Shed to keep them, and to deliver Mary her deed, and John his :   That he then sat up in bed, and signed, sealed and acknowledged them, and handed them to Dr. Shed; that immediately after, one was executed by his wife, agreeably to his request ; that both were attested by Elbridge Gerry and Dr. Shed, and certificates of acknowledgment written on them by the latter, who put them into his pocket-book, and shortly after went away :   That the intestate died on the same day, a short time after the execution of the deeds ; and that soon after his death, Dr. Shed delivered the deeds to the son and daughter, respectively, pursuant to the request of the grantor.

The question was, whether this was a good execution and delivery of the deed to the son, to vest the property in the son in the lifetime of the father.   The jury were instructed, that if at the time the grantor gave directions for making the deed, and after the deed was drawn and presented to him, but before he had signed and sealed it, he directed and intended, that from and after the execution of the deed, the same should be taken and retained by Dr. Shed, till after his death, and then be delivered to the grantee, his son, and he thereupon signed and sealed the deed, and pursuant to said intent, and without changing his purpose, delivered it to Dr. Shed to be attested and acknowledged, and retained by him without any further act of his, and it was attested, and the acknowledgment certified ac·

cordingly, and retained by Dr. Shed, pursuant to such direction and request, till after the grantor's death, and was then delivered to the grantee, it vested the estate in the grantee, from the time of the execution, and the grantor did not die seized. The jury, by consent, returned a verdict for the respondent.

Judgment to be rendered on the verdict, if the above direction was correct ; otherwise, the verdict to be amended and en tered as a verdict for the petitioners, and judgment for partition rendered thereon accordingly.

*N. J. Lord,* for the petitioners, argued that the instrument was not delivered to Shed as the deed of the grantor, but as his writing· only. If the grantor had not died, might he not have reclaimed the instrument from Shed ? If so, then there was no such delivery as is required to give effect to a deed. *Kirk* v. *Turner,* 1 Dev. Eq. Rep. 14. *Wheelwright* v. *Wheelwright,* 2 Mass. 447. Com. Dig. Fait, A. 4. Perk. §§ 137, 138, 143, 144. *Carr* v. *Hoxie,* 5 Mason, 60. *Jackson* v. *Catlin,* 2 Johns. 248. *Johnson* v. *Baker,* 4 Barn. & Ald. 440.

The fiction, by which an instrument is sometimes held to relate back to the first delivery, is not to be adopted where, as in this case, no purpose of justice requires it. *Lyttleton* v. *Cross,* 3 Barn. & Cres. 317. 4 Kent Com. (4th ed.) 454.

*Ward,* for the respondent. At the time of the second delivery of the deed, it related back to the first delivery. Such is the established rule of law in cases like this. Shep. Touch. 72. 2 Hilliard's Ab. 301. *Belden* v. *Carter,* 4 Day, 66. *Stewart* v. *Stewart,* 5 Connect. 317. *Hatch* v. *Hatch,* 9 Mass. 310. Circumstances determine whether an instrument is a deed or an escrow, and not the terms used by the party. *Clark* v. *Gifford,* 10 Wend. 310. *Simonton's Estate,* 4 Watts, 180.

SHAW, C. J. Whether, when a deed is executed, and not immediately delivered to the grantee, but handed to a stranger, to be delivered to the grantee at a future time, it is to be considered as the deed of the grantor presently, or as an escrow, is often matter of some doubt; and it will generally depend rather on the words used and the purposes expressed, than upon the name which the parties give to the instrument. Where the

future delivery is to depend upon the payment of money, or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed, until the second delivery ; but when thus delivered, it will take effect, by relation, from the first delivery. But this distinction is not now very material, because where the deed is delivered as an escrow, and afterwards, and before the second delivery, the grantor becomes incapable of making a deed, the deed shall be considered as taking effect from the first delivery, in order to accomplish the intent of the grantor, which would otherwise be defeated by the intervening incapacity. *Wheelwright* v. *Wheelwright*, 2 Mass. 454. The cases there cited fully justify this position ; and the principle is recognized in *Hatch* v. *Hatch*, 9 Mass. 310.

This principle governs the present case. Mansfield, the grantor, being seized of the land, executed and acknowledged a deed, and delivered it to Dr. Shed, with a request that he would deliver it to the grantee, after his, the grantor's, decease ; which he did. Then, by relation, the deed took effect, as at the time of the first delivery, and devested the estate of the grantor, as from that time.

It is immaterial to inquire, what would have been the effect, if the grantor had recovered from his sickness and taken back the deed. As the estate did not effectually pass till the second delivery, if that second delivery had been prevented, it would probably have been held that it was wholly inoperative. Nor is it material to inquire whether such deed would have been valid against creditors. Had the deed been executed in the most formal manner, and delivered to the son himself, in presence of witnesses, if made without valuable consideration, it could not avail against creditors.

*Judgment on the verdict for the respondent.*